Good morning, ladies and gentlemen. Our first case for argument this morning is Coach v. Di Da Import. Ms. Shields. May it please the Court, I'm Carolyn Shields, representing the appellant defendant, Di Da Import and Export, Inc. Di Da has appealed two interlocutory orders, a preliminary injunction, including Di Da's personal jurisdiction defense to the preliminary injunction, and the District Court's order denying Di Da's motion to dismiss for lack of personal jurisdiction. Ms. Shields, your brief says the preliminary injunction wasn't specific enough. I must confess, I couldn't find any preliminary injunction. Is there any document that looks like a preliminary injunction? No, Your Honor, there is an order granting plaintiff's motion for a preliminary injunction. Yeah, well, I will, we will obviously have to pursue this with your adversary, but if there's no preliminary injunction in this case, there is, of course, nothing from which you can appeal, and there's nothing that tells your client to do anything. That's why you can't appeal, because there's no order. Right. That's the problem. All right. If the Court's preliminary injunction... If there is one. If there is one. Which you just said there isn't. I'm not sure whether there is one or not. Well, there isn't one. All right. Right? I mean, you just said, I can't find any, you say there isn't any, certainly Coach has not pointed to one. The District Court may have planned to enter a preliminary injunction, but it didn't. Well, the District Court said a preliminary injunction was appropriate. Yes. The Judge said all those things. Right. And then he didn't enter one. All right. Well, if there is a preliminary injunction, then deed is personal jurisdiction defense to it. It should be reviewable along with the preliminary injunction. The Judge had to go through several steps to get to whether a preliminary injunction was appropriate. One of those is whether there's personal jurisdiction over the party to be restrained. Others are probability of success on the merits, irreparable harm, adequate remedy at law, and personal jurisdiction should be just as reviewable as those other steps. If there is a preliminary injunction, then, and jurisdiction over that, then there is pendant jurisdiction over the order denying deed is motion to dismiss for lack of personal jurisdiction. Deeder offered facts showing that its website was passive. Coach didn't offer any facts in opposition to that. Yet the Court found that the website was used by Deeder to target customers in Illinois. I think you'll have to address the waiver question before you get into the merits. I'm happy to. The District Court found waiver despite Deeder's taking the position throughout this case that it intended to challenge personal jurisdiction. It communicated that intention to Coach throughout the case. It first showed up in Deeder's answer in November in 2013 as the first affirmative defense. Well, the problem is that there were 15 months of litigation that ensued including merits discovery, and the motion to dismiss on jurisdictional grounds wasn't brought until after the close of discovery in response to the motion for the injunction after discovery had closed. So why isn't that too late? Well, Deeder needed discovery that it didn't get until June of 2014 to show that none of the causes of action arose out of its Illinois contacts. Why was Deeder in any doubt about what its own Illinois contacts were? It knew what its business is right from the outset. It could say the day the suit was filed, we don't sell in Illinois, which is what you later said. You didn't need discovery from Coach to know where you conduct your own business. Well, we did sell some goods in Illinois. What we didn't know is what models of our goods Coach claimed to be infringing. And Coach couldn't tell us what models they claimed to be infringing until they had our catalog with photographs that matched them to model numbers, and then in response to Deeder's discovery, what model numbers do you claim to be infringing? They listed the model numbers. We could compare them with the invoices to Illinois customers and show that none of the models sold to Illinois customers were models which Coach claimed to be infringing. And we got that discovery in June of 2014. Throughout the depositions, Deeder required that the depositions of its designees be taken in New York and not in Illinois. Coach knew that Deeder intended to challenge personal jurisdiction, for in the deposition of Deeder's sales designee on October 30, 2014, Coach asked 13 pages worth of questions about facts. Under those circumstances, not only did Deeder not waive its intention to challenge personal jurisdiction, but Coach knew that it had not waived it. Well, the problem is the burden is on the proponent of jurisdiction to establish the facts necessary to support it, and so you could have easily moved very early on in the litigation based on your jurisdictional defense and put Coach to its burden, and then the issue would have been fleshed out very early in the litigation and not after everybody had expended almost a year and a half of time and effort litigating the case in the Northern District of Illinois. Well, nobody lost anything because the discovery is still relevant if the case were to be brought in New York. The discovery would still be relevant to that. The district court doesn't have any significant investment in the case. It set some deadlines. There were three agreed motions to extend discovery deadlines and one status hearing to set deadlines. That's an insignificant investment, I believe, by the district court, and Deeder could not have made that motion earlier. Deeder could not have made the argument You could easily have made the motion and made the legal argument and put Coach to its burden. Right? And then Coach presumably would have asked for some limited jurisdictional discovery, and the judge would have entertained that presumably for a limited period of time, and the issue would have gotten, as I said, fleshed out very early in the litigation before all of the time and effort was invested. The fact that it can be replicated in another jurisdiction doesn't really excuse what happened here. Well, I still think it's important to the motion on the part of Deeder to know from Coach what models they claim to be infringing in order to break that motion. That's what filing the motion does. Right? Perhaps. With respect to the preliminary injunction, if there is one, as a matter of law, Deeder contends that when Coach elects statutory damages it has a legal remedy and there's no right to a preliminary injunction as security for the judgment. Even if it hadn't elected statutory damages the recovery of profits, the Supreme Court says is a legal remedy so the rule of Grupo Mexicano would say there's no right to a preliminary injunction as security for the judgment. I'll reserve the rest of my time for rebuttal. Certainly, Ms. Shields. Mr. Cole. Good morning and may it please the Court. Your Honor, I hope to discuss this morning. First, the District Court's finding that The first thing you need to discuss is where's the preliminary injunction? Roger, Your Honor. When Coach filed his motion for a preliminary injunction. There's an answer to that. It is either a particular place in the record or there isn't one. Yes, Your Honor. The opinion that was issued by the District Judge served. No, it does not. Federal Rule of Civil Procedure 65D says that an injunction must be specific in terms and cannot incorporate any other document. And we've said repeatedly that that means it must be a separate document it cannot be an opinion. If what your view is, is that the opinion is the injunction, that's simply wrong. There is no injunction. And then we have two possibilities. Either there's no appellate jurisdiction because there's just no judicial order at all or the District Judge just isn't done with its job. Did either side go back to Judge Duryagian and say, Judge, you need to comply with Rule 65D? No, Your Honor. Seems to me you've got at this stage really only one choice. Either parties do that and the judge complies with Rule 65D or we dismiss this appeal for lack of jurisdiction. And this is over because there is no injunction. Well, Your Honor, taking the former option there, if the court finds, in fact, that the, as you just ruled, that there is no order then the parties should go back and request Judge Duryagian to issue that order. While we're already here, Your Honor, we should still It's very hard to know what we're here about. I don't know what's in this non-existent injunction. One of DDA's arguments is that it can't be enjoined because it isn't selling any allegedly infringing goods and hasn't for three years. Right? That's normally a pretty good argument unless the district court were to make findings along the lines of well, there's a risk of this happening again. I don't see any finding by the district court that there's a risk that DDA will once again be manufacturing goods bearing a reasonable approximation of Coach's trademarks. In the absence of that, it's difficult to know what's going on. Perhaps, on the other hand, what the district judge meant was some kind of asset freeze. But that depends critically on the precise terms of the freeze, which we can't find anywhere, which don't exist. So there has to be not only a choice by the district judge about what this injunction contains, but then we really need the parties to focus in their briefs about what's good or bad about the precise things the judge has done. And the briefs we have on file don't do that because there isn't anything to focus on. Your Honor, that is one issue that we've raised, that we attempted to raise in our brief that while the appellants focused on this idea that we were seeking an injunction to stop the continued sale of infringing goods, that's not what was at issue at all. The issue came down to I don't know what the issue is until I know what's in the district judge's order. And there isn't anything in the district judge's order. Absolutely fair. DEDA thinks that it's been enjoined not to make any more goods bearing its double D as an imitation of Coach's double C. You think it hasn't been enjoined to do that. That is correct. But I don't know. District judge hasn't told us. We base our position that that's not what was requested in the motion which started the chain of things. Our motion came on the heels of DEDA attempting to strong-arm Coach and to settle. Take this pennies on the dollar offer or we're going to go to China. That's what prompted our motion to then seek the equitable relief to say well we are in fact asking for an accounting and for a discouragement of any profits. So therefore we would like the court to solely restrain DEDA from transferring its assets outside of the ordinary course. This idea that Coach is somehow seeking to restrict DEDA's continued sale of goods, that was weaved out of thin air. That was never brought up or never raised in Coach's motion. Well it's discussed in the judge's decision. Yes. It was discussed in the judge's decision. So where did he get that idea if it wasn't part of the motion litigation? Your Honor, and we attempted, he received, he got that from the appellant's response to our motion for a preliminary injunction. In our reply, we attempted to refocus the court's attention to what was really at issue. However, because that was raised just as the personal jurisdiction argument was raised, the court addressed it. Right, but as we've been discussing, there was no effort on your part to clarify the matter after the judge's decision issued, or to submit a document that would constitute the injunction for the judge to sign that might have refocused everybody on what you were actually looking for in terms of relief. Yes, and we certainly had an obligation to do that under the Seventh Circuit rules, and Coach did not do that. One of the other issues that still, that has been raised, in which we believe while we're here for judicial resources, for the sense of judicial economy, we might as well address it, is this idea that Coach, or excuse me, is the idea that DITA did not waive its argument to jurisdiction. And when Judge Draygen reached that conclusion, he reached that conclusion based off of several things. He looked at the entire litigation history of this, which was 16 months, and everyone acknowledges that DITA in fact did raise as one of their 12 affirmative defenses an objection to personal jurisdiction. But from that point up until they actually filed their motion to dismiss 16 months later, DITA did nothing. DITA did not affirmatively press their issue of their objection to the personal jurisdiction. And so you had 36 docket entries, which included 8 hearings. Of those 36, excuse me, of those 8 hearings, we had 2 joint motions for discovery, to extend discovery. And that wasn't to extend discovery with respect to jurisdiction, but it was to extend all of that discovery. DITA also had to respond to Coach's motion to compel. And even at that point, that might have been an appropriate opportunity for DITA, if they had an issue with jurisdiction, to raise their objection. Instead, they did not. And so you have 16 months of active litigation in which DITA failed to raise this issue. And although counsel had just identified, well, they didn't receive the information until June of 2015, or 2014, whatever information they deemed they needed to challenge jurisdiction, it still took them another 6 months to actually file their motion to challenge. And for that reason, Your Honor, the court should find that Judge Duryagan correctly held that DITA waived its jurisdictional objection. Unless the court has any other questions, we will rest. Thank you, counsel. Anything further, Ms. Shields? All right. We will give the parties one week to file in the district court a motion asking it to comply with Rule 65D. If no such motion is filed within a week, the appeal will be dismissed summarily for lack of jurisdiction. If such a motion is filed, you should file that motion with us simultaneously and promptly file with us any response the district court makes to that motion. If that response requires supplemental briefs from either side, you should inform us of your opinion, and we will tell you how much time and length we will allow for supplemental briefing. The appeal will be taken under advisement when we learn the results of this motion. The second case of the morning is Nala v. Chicago.